# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

PATSY HODGE,              )
                              )

          **Plaintiff,**       )

                              )     **Civil Action No. 2:10-00026**

**v.**                    )     **Judge Nixon / Knowles**

                              )

**MICHAEL J. ASTRUE,**     )

**Commissioner of Social Security**   )

                              )

          **Defendant.**     )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 10. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 13.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for DIB on February 3, 2005, alleging that she had been

disabled since January 1, 2002, due to fibromyalgia, a hip replacement, a torn left shoulder muscle, sleep apnea, irritable bowel syndrome, a rotator cuff tear, carpal tunnel syndrome, nerve damage in the left hand, and migraines. Docket No. 6, Attachment ("TR"), TR 55, 58-60. Plaintiff's application was denied initially (TR 21) and upon reconsideration (TR 20). Plaintiff subsequently requested (TR 45) and received (TR 787-822) a hearing. Plaintiff's hearing was conducted on April 15, 2008, by Administrative Law Judge ("ALJ") Jack B. Williams. TR 787. Plaintiff and vocational expert ("VE"), Anne Thomas, appeared and testified. TR 787-88.

On May 28, 2008, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 10-19. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has engaged in substantial gainful activity since January 1, 2002, the alleged onset date.[1]

3. The claimant has the following severe impairment: mood disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she

---

[1]Under this finding, the ALJ listed Plaintiff's posted earnings for several years in the 2000s and concluded that, "All these posted earnings are below substantial gainful activity." TR 12. Given that reasoning, the ALJ presumably intended this finding to state that Plaintiff has *not* engaged in substantial gainful activity since the alleged onset date.

cannot do prolonged standing/walking and could
stand/walk a total of 4 to 6 hours in an 8-hour workday, and
sit 6 hours in an 8-hour workday.  She has only mild
impairment of concentration and attention, her memory is
intact and she can relate adequately with others.  Her
anxiety is improved with medications.

6.    The claimant has no past relevant work (20 CFR
      404.1565).

7.    The claimant was born on May 13, 1964 and was 37 years
      old, which is defined as a younger individual age 18-49, on
      the alleged disability onset date (20 CFR 404.1563).

8.    The claimant has a "limited" to a high school education and
      is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not an issue because the
      claimant does not have past relevant work (20 CFR
      404.1568).

10.   Considering the claimant's age, education, work
      experience, and residual functional capacity, there are jobs
      that exist in significant numbers in the national economy
      that the claimant can perform (20 CFR 404.1560(c) and
      404.1566).

11.   The claimant has not been under a disability, as defined in
      the Social Security Act, from January 1, 2002 through the
      date of this decision (20 CFR 404.1520(g)).

TR 12-18 (footnote added).

Plaintiff filed a request for review of the hearing decision,[2] and, on February 12, 2010,

the Appeals Council issued a letter declining to review the case (TR 3-5), thereby rendering the

decision of the ALJ the final decision of the Commissioner.  This civil action was thereafter

timely filed, and the Court has jurisdiction.  42 U.S.C. §§ 405(g).  If the Commissioner's

---

[2]The undersigned was unable to locate Plaintiff's request for review within the record.

3

findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different

conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson*, 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability

---

[3]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: (1) determining that Plaintiff's mental impairment did not meet Listing 12.04; (2) his assessment of Plaintiff's credibility; and (3) his evaluation of the opinion of registered nurse, April J. Rumage.  Docket No. 9.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery*

*v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Listing 12.04**

Plaintiff argues that the ALJ erred in determining that Plaintiff's mental impairment did not meet the criteria provided under Listing 12.04. Docket No. 9. To support this assertion, Plaintiff states that she has "demonstrated all the symptomology of a depressive disorder," and that she has been diagnosed with bipolar disorder and depression. *Id.* She proffers her Global Assessment of Functioning ("GAF") scores from her treatment at Life Care Family Services as evidence of her "serious symptoms," and her social and occupational limitations. *Id.*

Defendant responds that the ALJ thoroughly evaluated all of Plaintiff's impairments regarding the relevant medical listings and properly determined that Plaintiff does not have an impairment or combination of impairments that meets Listing 12.04. Docket No. 13. Defendant additionally argues that substantial evidence supports the ALJ's determination. *Id.*

Listing 12.04 provides:

> 12.04 *Affective disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

> a. Anhedonia or pervasive loss of interest in almost all activities; or
>
> b. Appetite disturbance with change in weight; or
>
> c. Sleep disturbance; or
>
> d. Psychomotor agitation or retardation; or
>
> e. Decreased energy; or
>
> f. Feelings of guilt or worthlessness; or
>
> g. Difficulty concentrating or thinking; or
>
> h. Thoughts of suicide; or
>
> i. Hallucinations, delusions, or paranoid thinking;

AND

B. Resulting in at least two of the following:

> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Paragraph C of Section 12.00 for mental disorders explains:

> C. *Assessment of severity*. We measure severity according to the functional limitations imposed by your medically determinable mental impairment(s). We assess functional limitations using the four criteria in paragraph B of the listings: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of marked decompensation. Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis. See §§ 404.1520a and 416.920a.

As noted above, if Plaintiff's mental impairment satisfies the criteria of Listing 12.04, then "benefits are owing without further inquiry."

The ALJ in the case at bar found that Plaintiff's mood disorder was a severe impairment, but that, "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." TR 12 (internal citations omitted).

Plaintiff argues that her treatment records from Life Care Family Services demonstrate that she meets Listing 12.04. Docket No. 9. Specifically, Plaintiff argues that she has demonstrated all the symptomology of a depressive disorder, complaining of depressed mood, poor motivation, indecisiveness, fatigue/loss of energy, poor self-esteem, social isolation, crying spells, anhedonia, and changes in her appetite patterns. *Id.* Plaintiff also argues that she reported social anxiety, excessive worry, and avoidance, and that she has been diagnosed with bipolar disorder and depression. *Id.* Finally, Plaintiff argues that during her course of treatment at Life Care Family Services, she was never assessed with a GAF score above 50, indicating her

"serious symptoms" and "her inability to maintain social functioning, concentration, and episodes of deterioration in work or work-like settings." *Id.*

While Plaintiff's arguments focus primarily on her satisfying the "paragraph A" criteria, Plaintiff proffers her GAF scores apparently to demonstrate that she also satisfies the "paragraph B" criteria. With regard to Plaintiff's citation of her GAF scores to demonstrate that she meets the listing, the SSA has stated that GAF scores do not correspond directly to the legal standard for disability, and ALJs and courts are not bound, as a general rule, to attach weight to a GAF score (*Edwards v. Comm'r of Soc. Sec.,* 654 F.Supp.2d 692, 703 (W.D.Mich. 2009)*, citing Wind v. Barnhart,* 133 Fed.Appx. 684, 692 n. 5 (11th Cir.2005)), because, *inter alia*, a GAF score may be considered unreliable to the extent that it is based on a claimant's own reports of her own symptoms, mental state, and limitations (*see Ramey v. Astrue,* 2009 WL 537200, *5 and n. 4 (E.D.Tenn. Mar. 3, 2009)). Additionally, GAF scores capture a claimant's state at the time of the evaluation, but for an impairment to meet or equal a listing, it must also satisfy the duration requirement, about which the GAF score says nothing. *See* 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). Accordingly, Plaintiff's GAF scores do not establish that she satisfies either the A or the B criteria.

In order to meet or equal Listing 12.04, according to its plain language, Plaintiff must establish that she satisfies the A *and* B criteria, *or* the C criteria. Regarding the "paragraph B" criteria of Listing 12.04, the ALJ stated:

> In activities of daily living, the claimant only has mild restriction.
> Claimant testified she gets up at 9 a.m., showers and dresses
> herself. She sits and watches television all day.

> In social functioning, the claimant has moderate difficulties. Claimant testified she has one friend she sees a couple of times a month.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Records indicate claimant does substitute teaching 4 to 5 days a month which requires planning and other activities related to concentration, persistence or pace in dealing with students.
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation.
>
> Claimant testified that pain was her worse [*sic*] problem.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied.

TR 13.

As has been discussed above, Plaintiff cannot meet Listing 12.04 strictly by satisfying the "paragraph A" criteria; rather, Listing 12.04 requires that satisfaction of *both* the A *and* B criteria (*or* the "paragraph C" criteria, which will be addressed below). Because, as the ALJ explained, Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, the 'paragraph B' criteria are not satisfied." TR 13. Since Plaintiff does not meet the "paragraph B" criteria, she cannot meet Listing 12.04 by simply satisfying the "paragraph A" criteria. Accordingly, the only remaining way that Plaintiff could meet Listing 12.04 is by satisfying the "paragraph C" criteria.

Regarding the "paragraph C" criteria, the ALJ stated:

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria. Rebecca Joslin, Ed.D, a state agency medical consultant, submitted a psychiatric review technique form dated June 21, 2006 and based the medical disposition on 12.04 -

affective disorder and 12.06 - anxiety-related disorder. Dr. Joslin opined claimant's limitations were primarily due to pain. Dr. Joslin further opined that claimant had only moderate limitations, that she is still working, and that a medically determinable impairment was present that does not precisely satisfy the diagnostic criteria for either 12.04 or 12.06.

TR 13.

Because Plaintiff did not satisfy the "paragraph C" criteria, she likewise cannot use that basis for meeting Listing 12.04.

As Plaintiff cannot establish that she satisfies both the paragraph A and B criteria, or the paragraph C criteria, Plaintiff cannot establish that she meets or equals Listing 12.04. Accordingly, Plaintiff's argument that the ALJ erred in finding that she did not meet or equal Listing 12.04 fails.

**2. Plaintiff's Credibility**

Plaintiff contends that in finding that her subjective complaints were not fully credible, the ALJ did not adequately support his conclusions and did not appropriately address her complaints of pain. Docket No. 9. Specifically, Plaintiff asserts that, although the ALJ correctly identified the two-step process for evaluating Plaintiff's pain, he failed to evaluate the intensity, persistence, and limiting effects of her symptoms, as required in the second step, in order to determine the extent to which the symptoms limit her ability to do certain basic work activities. *Id.* Plaintiff contends that "the ALJ's analysis amounts to boilerplate," and claims that the ALJ did not give enough credence to her diagnosed fibromyalgia as a legitimate basis for her complaints of debilitating pain. *Id.*

Defendant responds that, "In assessing Plaintiff's residual functional capacity, the ALJ properly determined that Plaintiff's statements concerning the severity of her pain were not

entirely credible."  Docket No. 13.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain.  *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)).  After evaluating these factors in conjunction with the

evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

After considering the medical and testimonial evidence of record, the ALJ in the case at bar found that Plaintiff's subjective complaints of pain were inconsistent with the medical evidence of record. TR 16. Specifically, the ALJ articulated that:

> I have considered the claimant's complaints of pain. It is well known that pain is a subjective symptom that is not measurable, and it is recognized that there are many disorders in which the common symptom is constant, unremitting pain, which is not responsive to therapeutic measures. Pain can be an important factor causing functional loss. However, it can constitute disability for Social Security purposes only if it is not remediable, if it is of such a degree as to preclude an individual from engaging in substantial gainful activity, and if it is associated with relevant abnormal findings. These factors are not of a significant degree as evidenced by the claimant's records. In this case, the medical evidence does not document a continuing impairment of incapacitating proportions, i.e., one which would produce pain of such intensity that the ordinary physical activity to perform basic work-related functions would be impossible or contradicted for a continuous period of 12 months or more. I do not imply that the claimant is symptom-free, but a review of the evidence in this case persuades the undersigned that the claimant's complaints of pain and incapacitation are not credible when viewed in light of medical findings.

*Id.*

Supporting his contention that Plaintiff's subjective complaints were inconsistent with the medical findings, the ALJ referenced the medical records from Cookeville Regional Medical Center, Jackson County Health Department, Life Care Family Services, Dr. Dudney, Dr. Dycus,

Dr. Surber, Dr. Blazina, Dr. Pennington, Dr. Joslin, and Nurse Rumage. TR 15-18. Specifically, the ALJ noted, *inter alia*, that the "[p]rogress notes from Cookeville Regional Medical Center dated June 1, 1999, indicated claimant had findings suggestive of fibromyalgia, although at times she seemed a little bit *exaggerated* for clinical findings (Page 65, Section F)." TR 15 (italics in original). The ALJ also noted that Dr. Blazina found that Plaintiff had no impairment in her reality testing, and that, "*by claimant's report,*" Plaintiff suffered from sleep apnea, irritable bowel syndrome, migraine headaches, chronic pain, fibromyalgia, hypertension, and allergies. *Id.* (italics in original). The ALJ also discussed Dr. Blazina's findings that Plaintiff's GAF was 70-75, that Plaintiff's ability to understand and remember was not noticeably limited, that Plaintiff's ability to sustain concentration and persistence appeared to be only mildly limited due to her restlessness and anxiety, and that Plaintiff's social interaction and adaption abilities were not noticeably limited. *Id.* The ALJ additionally noted that Plaintiff's treating psychiatrist, Nurse Rumage, opined that Plaintiff had no limitations with her abilities to understand and remember, to sustain concentration and persistence, and to socially interact and adapt. *Id.*

Regarding Dr. Surber's findings, the ALJ noted:

> Following examination, Dr. Surber opined claimant could frequently lift and/or carry at least 10 to 25 pounds during one-third to two-thirds of an 8-hour workday, and she would be able to stand and/or walk with normal breaks for up to at least four to six hours in an 8-hour workday. (Pages 377-382, Section F)

TR 15.

Regarding Dr. Pennington's opinion, the ALJ stated:

> Frank Pennington, M.D., a state agency medical consultant, in a physical residual functional capacity assessment, opined claimant's medical records did not support the degree of restrictions and pain alleged. The counselor opined claimant could

16

perform light work with occasional climbing of ramps/stairs/ladders/ropes and scaffolds. The only additional limitation included limited reaching in all directions (including overhead).

TR 16.

Also in evaluating Plaintiff's credibility, the ALJ considered Plaintiff's testimony at the hearing:

She has a valid driver's license, but if she hurts too much or has taken her medications, she does not drive. ... She works as a substitute teacher in Jackson County, 4 to 5 days a month, but not full time. ... Her impairments include physical problems. First, her hip has caused her trouble with her right leg being shorter than the left and she has to wear a lift in her shoe, which affects her walking as she is not able to walk up hills or steps. She cannot stand for long periods of time. She has some back trouble located in her lower back and left hip with associated pain everyday; some days worse than others. She had been referred to a pain clinic where she received injections which did not help. She utilizes the local Health Department for treatment. Her pain has gotten worse and she cannot bend or lift her legs. She has had to quit everything because of her pain. She has fibromyalgia and her symptoms come and go 6 to 7 days a month and she is unable to do anything. She has painful muscles in her right shoulder and cannot lift. She even has problems doing her hair due to pain. She has carpal tunnel syndrome and her hands become numb while writing and holding a spoon. She has bipolar disorder and social anxiety, but medications do help her anxiety. She takes Valium and cannot work at school without taking this medication. She experiences panic attacks every week and she has to get away and shut down. When she experiences these attacks, she feels as if she is having a heart attack. Her pain is her worse [sic] problem. Her husband does household chores. She arises at 9 in the morning, showers, dresses herself and sits and watches television. She sees a friend a couple of times a month and talks to her friend on the telephone. She grocery shops two times monthly, but has no social activities and has no family near her. Due to her depression, she cries a lot. She can stand 10 to 15 minutes, walk 30 minutes and walking is easier than standing. She can sit one hour to one and one-half hours.

TR 14-15.

After considering the medical evidence and Plaintiff's testimony, the ALJ concluded:

> I find that the claimant has rather minimal physical findings to support complaints, she has not received much treatment even when she had access to doctors. Her complaints are vague and appear overstated. I do not question her sincerity, but believe she could do jobs. The primary problem seems to be obesity and lack of motivation.

TR 17.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." TR 16. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision. Contrary to Plaintiff's claims that the "ALJ's analysis amounts to boilerplate," as has been demonstrated, the ALJ clearly articulated the evidence upon which he based his decision; his findings are supported by substantial evidence, and analysis of Plaintiff's credibility was proper. Therefore, this claim fails.

### 3. Nurse Rumage's Opinion

Plaintiff argues that the ALJ did not accord appropriate weight to the opinion of April J. Rumage, registered psychiatric nurse at Life Care Family Services. Docket No. 9. Specifically, Plaintiff argues that, while Nurse Rumage is not considered a treating physician under the Act, SSR 06-03p requires the ALJ to consider "other sources" in the same manner when determining whether Plaintiff is disabled. *Id.* Additionally, Plaintiff acknowledges that an ALJ is not required to afford any weight to a GAF score, but argues that the ALJ did not properly consider the GAF assessments that Nurse Rumage provided. *Id.*

Defendant argues that, under SSR 06-03p, "[w]hile an adjudicator is required to consider all evidence in the record and 'generally should' explain the weight given to opinions from sources who are not acceptable medical sources, there is no requirement that he or she specifically discuss and weigh such an opinion." *Id.*, *citing* 20 CFR §404.1502, 20 CFR §404.1513, 20 CFR §416.902, SSR 06-03p. Defendant responds that the ALJ properly evaluated Nurse Rumage's opinion, and that the ALJ had no reason to discuss Nurse Rumage's opined

GAF scores because Nurse Rumage indicated on a mental capacity evaluation form that mental limitations were not routinely assessed for medication management, which is primarily why she saw Plaintiff. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the

> opinion of a specialist about medical issues related to his or her
> area of specialty than to the opinion of a source who is not a
> specialist.
> > ...

20 CFR § 416.927(d).  *See also* 20 CFR § 404.1527(d).

Although a nurse practitioner is not among the acceptable medical sources enumerated in

20 CFR § 404.1513(a), the Regulations provide that the ALJ may properly

> "use evidence from other sources to show the severity of your
> impairment(s) and how it affects your ability to work.  Other
> sources include, but are not limited to -
>
> > (1) Medical Sources not listed in paragraph (a) of this
> > section (for example, *nurse-practitioners*, physicians' assistants,
> > naturopaths, chiropractors, audiologists, and therapists)."

20 CFR § 404.1513(d) (emphasis added).

Additionally, under the heading "Explanation of the Consideration Given to Opinions

from 'Other Sources,'" SSR 06-03p states as follows:

> Since there is a requirement to consider all relevant evidence in an
> individual's case record, the case record should reflect the
> consideration of opinions from medical sources who are not
> "acceptable medical sources" and from "non-medical sources"
> who have seen the claimant in their professional capacity.
> Although there is a distinction between what an adjudicator must
> consider and what the adjudicator must explain in the disability
> determination or decision, the adjudicator generally should explain
> the weight given to opinions from these "other sources," or
> otherwise ensure that the discussion of the evidence in the
> determination or decision allows a claimant or subsequent
> reviewer to follow the adjudicator's reasoning, when such opinions
> may have an effect on the outcome of the case. In addition, when
> an adjudicator determines that an opinion from such a source is
> entitled to greater weight than a medical opinion from a treating
> source, the adjudicator must explain the reasons in the notice of
> decision in hearing cases and in the notice of determination (that
> is, in the personalized disability notice) at the initial and
> reconsideration levels, if the determination is less than fully

favorable.

The ALJ, in determining Plaintiff's residual functional capacity, specifically acknowledged Nurse Rumage's "Mental Capacities Evaluation" and stated:

> Claimant's representative submitted [a] mental capacities evaluation from claimant's treating psychiatrist, April Rumage, in which it was opined claimant had no limitations with her abilities to understand and remember; to sustain concentration and persistence; and to socially interact and adapt. This counselor stated *claimant reported* great difficulty dealing with people in general, but especially groups of people. She had a great deal of anxiety which has the potential to interfere with cognitive functioning and with social interactions. Her mood is not under good control with medications. (Pages 564-565, Section F)

TR 15-16.

As shown by the ALJ's discussion of Nurse Rumage's evaluation, her opinion was considered. As the ALJ noted, Nurse Rumage indicated that Plaintiff did not exhibit any evidence of limitation in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *Id.*, *citing* 219-20. Also as the ALJ noted, Nurse Rumage recounted in her "remarks on above or other limitations" section, Plaintiff's subjective complaints, which the ALJ properly determined were not fully credible, as discussed above. *Id.* Additionally, Nurse Rumage explicitly noted on her mental capacities evaluation form that mental capacities were "not routinely assessed for med. management." TR 219.

Although Plaintiff is correct that the ALJ did not reference Nurse Rumage's reported GAF assessments in his decision, such an omission does not violate SSR 06-03p and does not constitute a basis for reversal or remand. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002); *DeBoard v. Comm'r of Soc., Sec.*, No. 05-6854, 2006 WL 3690637, at *4 (6th Cir. Dec. 15, 2006). As noted above, GAF scores do not correspond directly to the legal standard for

disability, and ALJs and courts are not bound, as a general rule, to attach weight to a GAF score. *Edwards,* 654 F.Supp.2d at 703.

Because the ALJ clearly considered Nurse Rumage's evaluation and did not err in not specifically mentioning the GAF scores, Plaintiff's argument fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____

E. CLIFTON KNOWLES
United States Magistrate Judge